IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICHARD M. WOOD and MIRIAM C. WOOD, ) ) ) | CIVIL NO. 11-00150 LEK-KSC |

RICHARD M. WOOD and MIRIAM C.  )     CIVIL NO. 11-00150 LEK-KSC
WOOD,                              )

           Plaintiffs,    )

    vs.                   )

GREENBERRY FINANCIAL
SERVICES, INC. dba FRANKLIN
FINANCIAL; WELLS FARGO HOME
MORTGAGE OF HAWAII, LLC; EMC
MORTGAGE CORPORATION; JOHN
DOES 1-10; JANE DOES 1-10;
AND DOE CORPORATIONS AND
PARTNERSHIPS AND OTHER
ENTITIES 1-10,

           Defendants.

_____ )

**ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON PLAINTIFFS' FIRST AMENDED COMPLAINT**

      Before the Court is Intervenor Defendant Wells Fargo

Bank, N.A., as Trustee of the Structured Asset Mortgage

Investments II Inc. Bear Stearns Mortgage Funding Trust 2007-AR2,

Mortgage Pass-Through Certificates, Series 2007-AR2 ("Wells

Fargo"), and Defendant EMC Mortgage Corporation's ("EMC,"

collectively "Defendants"[1]) Motion for Summary Judgment on

Plaintiffs' First Amended Complaint ("Motion"), filed on July 5,

2012.  Plaintiffs Richard M. Wood and Miriam C. Wood

("Plaintiffs") filed their memorandum in opposition on

_____

    [1] The Court refers to moving defendants Wells Fargo and EMC
throughout as "Defendants".

September 10, 2012, and Defendants filed their reply on
September 17, 2012.  The Court finds this matter suitable for
disposition without a hearing pursuant to Rule LR7.2(d) of the
Local Rules of Practice of the United States District Court for
the District of Hawai`i ("Local Rules").  After careful
consideration of the Motion, supporting and opposing memoranda,
and the relevant legal authority, Defendants' Motion is HEREBY
GRANTED for the reasons set forth below.

**BACKGROUND**

I.  **Factual Background**

        Plaintiffs filed their original Complaint on March 9,
2011, and their First Amended Complaint on July 25, 2011, against
Wells Fargo Home Mortgage of Hawaii, LLC; EMC, the loan servicer;
and Greenberry Financial Services, Inc. doing business as
Franklin Financial ("Franklin Financial").[2]  Plaintiffs are the
record owners of the subject property located at 77-301 Noelani
Way #23, Kailua-Kona, Hawai'i, 96778, designated as TMK (3) 7-7-
015-079-0009 (the "Property").  Plaintiffs executed and delivered
an adjustable rate promissory note ("Note") in the amount of

_____

        [2] According to Defendants, Wells Fargo is the current real
party in interest in this matter, rather than Wells Fargo Home
Mortgage of Hawaii, LLC.  Franklin Financial was served with the
original Complaint via its registered agent, but has not made an
appearance or filed a responsive pleading.

$280,000.00 on December 8, 2006 to Franklin Financial.[3]  The Note is secured by a mortgage dated December 8, 2006 ("Mortgage"), executed by Plaintiffs as mortgagors, in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Franklin Financial.  The Note secured by the Mortgage was recorded on December 8, 2006 in the Bureau of Conveyances, State of Hawai'i ("Bureau"), as Document No. 2006-231280.[4]  The Mortgage was assigned by MERS, as nominee for Franklin Financial, to Wells Fargo pursuant to an assignment of Mortgage ("Assignment"), recorded on July 20, 2010 in the Bureau as Document No. 2010-102884.[5]

Plaintiffs' First Amended Complaint alleges that they applied for and were promised a thirty-year, fixed-rate loan, but that Franklin Financial actually obtained two subprime loans. They allege that the loan application was completed by agents or employees of Franklin Financial, and that Plaintiffs were not provided with a completed, signed and dated copy of the application.  Plaintiffs claim that the November 18, 2006 loan

---

[3] The Note is attached as Exhibit A to the Declaration of Addie Pike ("Pike Declaration"), Senior Research Specialist for JP Morgan Chase Bank, N.A. ("Chase"), the authorized loan servicing agent for Wells Fargo.

[4] The recorded Mortgage is attached to the Pike Declaration as Exhibit B.

[5] The recorded Assignment is attached to the Pike Declaration as Exhibit C.

3

application included inflated income amounts, inserted by Franklin Financial, without Plaintiffs' knowledge.  They allege that Franklin Financial did not provide signed and dated copies of the following documents, *inter alia*: Truth in Lending Act Statement, Good Faith Estimate, HUD-1 Settlement Statement, Servicing Disclosure Statement, Notice of Assignment, and Disclosure of Credit Scores.  Plaintiffs also claim that Franklin Financial did not disclose the material terms of the loan, including relevant rates and Plaintiffs' right to rescind or cancel.  [First Amended Complaint at ¶¶ 18-31, 40-45.]

Plaintiffs approached EMC[6] during 2007 to seek a loan modification.  Plaintiffs and EMC entered into a Loan Modification Agreement dated October 2, 2008.[7]  [Id. at ¶¶ 47-48.]  EMC notified Plaintiffs by letter several times during 2008 and 2009 that they were in default following the modification, and advised them of the right to reinstate after acceleration ("Notices of Acceleration").[8]  On July 22, 2010, Wells Fargo recorded a Notice of Mortgagee's Intent to Foreclose Under a

---

[6] EMC was Chase's predecessor by merger.  [Pike Decl. at ¶ 13.]

[7] The Loan Modification Agreement is attached to the Pike Declaration as Exhibit I.

[8] The Notices of Acceleration are attached to the Pike Declaration as Exhibit J.

Power of Sale ("NOI") in the Bureau as Document No. 2010-104410.[9]
On August 22, 2010, Plaintiffs sent a purported qualified written
request ("QWR") to EMC, requesting identification of the holder
of the Note and Mortgage.  On October 4, 2010, counsel for EMC
sent a response to Plaintiffs' counsel, explaining that the
purported QWR did not qualify as a QWR.  [Id. at ¶¶ 53-55.]  On
March 3, 2011, Wells Fargo was the highest bidder at the
foreclosure sale of the Property, and, on March 17, 2011, it
filed a Mortgagee's Affidavit of Foreclosure Under Power of Sale
("Mortgagee's Affidavit") with the Bureau as Document No. 2011-
044941, which evidenced completion of the foreclosure sale.[10]  On
May 1, 2012, a Mortgagee's Quitclaim Deed Pursuant to Power of
Sale ("Quitclaim Deed") was recorded with the Bureau as Document
No. A-40540518.[11]

　　　　Plaintiffs assert the following claims in their First
Amended Complaint: Count I - violation of the Home Ownership
Equity Protection Act, 15 U.S.C. § 1639, *et seq.* ("HOEPA"); Count
II - violation of the Real Estate Settlement Procedures Act, 12
U.S.C. § 2601 *et seq.* ("RESPA"); Count III - violation of the

---

[9] The NOI is attached as to the Pike Declaration as Exhibit
K.

[10] The Mortgagee's Affidavit is attached to the Pike
Declaration as Exhibit M.

[11] The Quitclaim Deed is attached to the Pike Declaration as
Exhibit N.

Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA");
Count IV - violation of the Fair Credit Reporting Act, in
violation of 15 U.S.C. § 1681 *et seq.* ("FCRA"); Count V -
fraudulent misrepresentation; Count VI - breach of fiduciary
duty; Count VII - unjust enrichment; Count VIII - civil
conspiracy and aiding and abetting; Count IX - quiet title; Count
X - fraud; Count XI - violation of Fair Debt Collection Practices
Act, 15 U.S.C. § 1692e *et seq.* ("FDCPA");  Count XII - mistake;
Count XIII - unconscionability; Count XIV - unfair and deceptive
acts or practices ("UDAPs"), in violation of Haw. Rev. Stat.
§ 480-2 and § 481A-3; Count XV - failure to act in good faith;
Count XVIII - negligent infliction of emotional distress
("NIED"); Count XIX - violation of the Gramm-Leach-Bliley Act, 15
U.S.C. § 6801, *et seq.* ("GLBA"); Count XX - violation of the
right to privacy under the Hawai`i Constitution; and Count XXI -
violation of Haw. Rev. Stat. Chapter 667.[12]

        Plaintiffs seek: a judgment of rescission; statutory,
actual, treble, and punitive damages; a temporary restraining
order or injunctive relief; a judgment of recoupment,
reimbursement, and/or indemnification; and any other appropriate
relief.  [First Amended Complaint at pg. 51.]

---

        [12] The First Amended Complaint does not include Counts XVI
or XVII.  The Court refers throughout to the non-sequential
labels given to the claims by Plaintiffs.

## II.  **<u>Defendants' Motion</u>**

Defendants move for summary judgment on all of the claims in Plaintiffs' First Amended Complaint.  Defendants present evidence that, as part of the subject loan transaction, on October 25 and 26, 2006, Mr. Wood was provided with: (1) an initial Good Faith Estimate; (2) an initial TILA disclosure statement; (3) an Equal Credit Opportunity Act Disclosure; (4) a Patriot Act Information Disclosure; (5) a Credit Score Information Disclosure; and (6) a Privacy Notice Disclosure.  [Pike Decl., Exh. D.]  On December 18, 2006, as part of the closing process, Mr. Wood was provided with: (1) a TILA Disclosure Statement; (2) a Loan Servicing Disclosure Statement; (3) a Borrower's Certification and Authorization to Release Information; (4) an Equal Credit Opportunity Act Disclosure; and (5) a Consumer Credit Score Disclosure.  [Pike Decl., Exh. F.]  On December 18, 2006, Mr. Wood received a final HUD-1 Settlement Statement.  [<u>Id.</u>]  On January 2, 2007, EMC sent Mr. Wood a notice that, effective February 1, 2007, Franklin Financial would no longer service the loan, and that EMC would be the new servicer.  [Pike Decl., Exh. H.]

Defendants state that they were not involved in the origination of the loan, did not make any misrepresentations, were not responsible for any non-disclosures at the time of origination, and that Wells Fargo is in possession of the

7

original Note.  [Mem. in Supp. of Motion at 2-3.]

### A.   **HOEPA and TILA Claims**

Defendants first argue that Counts I and III fail to
state claims under HOEPA and TILA because: (1) they are time-
barred by the applicable statutes of limitations; (2) Plaintiffs
were provided with all necessary disclosures; (3) Plaintiffs were
not entitled to a Notice of Right to Cancel, because theirs was a
purchase money loan, not a refinance; and (4) Plaintiffs are not
able to tender funds to effect a rescission.  [Id. at 9-18.]

### B.   **RESPA Claim**

Next, Defendants argue that Plaintiffs' Count II RESPA
claim fails as a matter of law because it is time-barred and
without merit.  Defendants note that they could not have been
involved with excessive fees provided to the broker, because they
were not parties to the loan origination.  They also argue that
Plaintiffs failed to plead actual, pecuniary damages as required
by RESPA, and that the August 22, 2010 letter is not a QWR under
RESPA because it did not relate to the servicing of the loan or
contain a statement of specific reasons why Plaintiffs' account
was in error.  [Id. at 18-21.]

### C.   **FCRA Claim**

Defendants claim they are entitled to summary judgment
on Count IV because Plaintiffs lack standing to bring a FCRA
claim for damages.  Plaintiffs have not alleged that Defendants

received notification from a credit reporting agency ("CRA") regarding the accuracy of information furnished by Defendants. [Id. at 22.]

> **D.   Fraudulent Misrepresentation, Fraud, and Mistake**

According to Defendants, Counts V, X, and XII fail as a matter of law because they did not make any false representations to Plaintiffs.  They further argue that the fraud allegations are not alleged with the particularity required by Fed. R. Civ. P. 9(b).  As to the claim for mistake, Defendants argue that there are no allegations explaining what facts both Defendants and Plaintiffs misunderstood; rather, Defendants could not have been mistaken about any of the loan terms because they were not a party to the consummation.  [Id. at 23-27.]

> **E.   Breach of Fiduciary Duty**

Defendants argue that Count XI fails as a matter of law.  As lender and mortgage servicer, they assert that they did not owe Plaintiffs a duty with respect to the loan transaction or foreclosure.  [Id. at 27.]

> **F.   Unjust Enrichment**

Defendants seek summary judgment on Count VII on the ground that Plaintiffs do not allege that Defendants received and unjustly retained any benefit.  [Id. at 30.]

> **G.   Conspiracy and Aiding and Abetting**

Count VIII fails to state a claim, according to

Defendants, because it relies on Plaintiffs' meritless HOEPA, RESPA, TILA, FCRA, fraud, UDAP, and GLBA claims.  Again, Defendants note that they were not parties to the loan consummation, and it is impossible for them to have made any of the alleged material representations to Plaintiffs.  [Id. at 30-31.]

      **H.**    **Quiet Title**

Defendants argue that, in an action to quiet title, Plaintiffs have the burden to prove that they have paper title to the property or that they hold by adverse possession.  Here, Plaintiffs have not effectively rescinded, and they do not have title to the Property pursuant to the Quitclaim Deed.  [Id. at 32-33.]

      **I.**    **FDCPA Claim**

Next, Defendants seek summary judgment on Count XI because Wells Fargo was the holder of the Note and Mortgage at the time of the Foreclosure Sale.  They argue that a borrower does not have standing to challenge an indorsement of a note because a borrower is not a party to the indorsement or assignment.  Here, the Note was made payable to the order of Franklin Financial, who then properly negotiated the Note by indorsing the Allonge to the Note in blank, thereby converting the Note to a bearer instrument, and transferred it to Wells Fargo.  [Id. at 34-37.]

**J.**   **Unconscionability**

According to Defendants, Count XIII alleging unconscionability fails to state claim against them because they were not parties to the consummation of the loan, and had no part in explaining the terms of the loan to Plaintiffs or providing them with the necessary disclosures.  They also argue that Plaintiffs have not identified any unconscionable term in the various agreements.  [Id. at 38-39.]

**K.**   **UDAP**

Defendants argue they are entitled to summary judgment on Count XIV because the claim is time-barred, Defendants made no misrepresentations, and because Plaintiffs cannot tender funds to effect a rescission.  [Id. at 40-42.]

**L.**   **Good Faith**

Next, Defendants state that Count XV fails to state claim because: (1) they were not parties to the loan transaction and cannot have breached any agreement before such agreement was formed; (2) Wells Fargo did provide Plaintiffs with a loan modification, which they defaulted on; and (3) subsequent request for a loan modification was not improperly denied or ignored. [Id. at 43-45.]

**M.**   **NIED**

As to Count XVIII, Defendants argue that they did not act in an extreme and outrageous manner because they acted within

their rights by foreclosing on the Property, nor did they misrepresent any of the terms of the loan because they were not a party to its consummation.  They also argue that they did not breach any duty to Plaintiffs.  [<u>Id.</u> at 45-47.]

### N.   <u>GLBA and Constitutional Privacy Claims</u>

Defendants argue that Counts XIX and XX must be dismissed because there exists no private right of action for either of these claims.  [<u>Id.</u> at 48-50.]

### O.   <u>Haw. Rev. Stat. Chapter 667</u>

Defendants seek summary judgment on Count XXI, arguing that Wells Fargo completed the foreclosure sale in total compliance with Haw. Rev. Stat. Chapter 667, as evidenced by the Mortgagee's Affidavit.  They assert that Wells Fargo: (1) was represented by an attorney licensed to practice in Hawai'i; (2) published the required advertisement in The Honolulu Star-Advertiser once in each of three successive weeks, fourteen days before the public auction; (3) timely posted a copy of the NOI on the Property; and (4) recorded the Mortgagee's Affidavit.  [<u>Id.</u> at 51.]

## II.  <u>Plaintiffs' Memorandum in Opposition</u>

Plaintiffs argue that there are genuine issues of material fact precluding summary judgment, including: (1) Defendants are not the holders of the Note, but that the principal creditor is "Bank of America Trust"; (2) the

foreclosure was not properly conducted because there is a break in the chain of title; and (3) Plaintiffs did not receive proper notice of the foreclosure because they were not personally served with the NOI.  [Mem. in Opp. at 2-6.]  Plaintiffs also seek time for additional discovery.  [Id. at 5.]

Plaintiffs first argue, without providing evidentiary support, that through "informal discovery Plaintiffs have information that the principal creditor is actually Bank of America Trust."  [Id.]  They contend that Defendants "are unfairly and deceptively attempting to enforce the note and mortgage when they lack legal or beneficial ownership of the underlying note and mortgage.  These disputes are genuine issues that still remain and should be addressed at trial."  [Id.]

Next, Plaintiffs assert that the foreclosure was improperly conducted because Franklin Financial improperly transferred the loan.  Further, they argue that Defendants did not have proper legal authority to foreclose because Plaintiffs were not personally served with the NOI.  [Id. at 6.]

Plaintiffs state that they "are in the process of requesting a loan modification and are under the impression that they would qualify."  [Id. at 8.]  They also request time "to have movants make required disclosures and that plaintiffs be allowed time to conduct formal discovery."  [Id.]

In opposition to Defendants' Motion, Plaintiffs

submitted the Affidavit of Richard M. Wood ("Wood Aff.), but did not file a concise statement of facts or any supporting documents.   Mr. Wood states in his Affidavit:

> 5.   I do not know how Wells Fargo Bank has come to say they are the owner of my note and/or my mortgage as I never had any contract with them, they have not shown me proof that I have a contract with them, and don't believe I have a contract with them.
> 6.   I have applied for a loan modification, and I believe that negotiations regarding a loan modification are still ongoing.
> 7.   I am under the impression that a loan modification is under review and still possible.
> 8.   I believe that the foreclosure sale of the Property was not properly conducted.
> 9.   I believe that my Property involved the improper transfer or assignment of the Property to undisclosed third-party investors, transferees, successors, or assigns.
> 10.   I believe there is a break in [the] chain of title (by virtue of transfer or assignment to undisclosed third-party investors), thereby invalidating the foreclosure and this ejectment action.
> 11.   I believe that Greenberry Financial Services and/or Wells Fargo Bank improperly transferred or assigned my loan, the undisclosed third-party investors, transferees, successors, or assigns took an interest in my loan with knowledge and notice of problems with my loan (predatory lending/likelihood of default and foreclosure).
> 12.   I believe that Defendants did not have the proper legal authority to foreclose against the Property.
> 13.   I did not receive proper notice of the foreclosure since I was not personally served with the Notice of Intent.
> 14.   I have not received any information whether the original note and mortgage exist and if it does who is the custodian of the note and mortgage and where are those documents located.

[Wood Aff. (dkt. no. 59).]

14

## III. **Defendants' Reply**

In their reply, Defendants maintain that Plaintiffs'
First Amended Complaint, and their request for more time to
conduct discovery, are intended only to "further stall the
inevitable eviction of Plaintiffs from the Property." [Reply at
3.]  With their reply, Defendants filed Objections to Plaintiffs'
opposition, and fault Plaintiffs for not presenting any facts or
admissible evidence in opposition to the Motion.[13]  Defendants
argue that the Motion should be granted because: (1) Wells Fargo
properly completed the non-judicial foreclosure of the Property;
(2) Plaintiffs had actual notice of Wells Fargo's intent to
foreclose; (3) Plaintiffs have had over nineteen months to
conduct discovery, but have not yet requested any discovery from
Defendants; and (4) Plaintiffs are not presently being considered
for loan modification.  [Id. at 5.]

### A.   **Foreclosure Process**

Defendants argue that Plaintiffs have not submitted any
admissible evidence in support of their claim that Wells Fargo
did not have authority to foreclose.  Rather, Defendants claim
that Wells Fargo did have such authority, as set forth in the
Motion.  [Id. at 5.]

---

[13] Defendants object to the contents of the Wood Affidavit
as speculative and irrelevant to the essential elements of
Plaintiffs' claims, and argue that they do not raise any genuine
issues of material fact.  [Dkt. no. 57.]

They note that Plaintiffs actually received the NOI, despite claiming that they were not personally served.  In fact, personal service was made, but Plaintiffs attempted to refuse service, and refused to sign for it.  [Id. at 2; Declaration of Derek Wong ("Wong Decl."), Exh. O (7/25/10 Return of Service), Exh. P (9/6/10 Certified Mail Delivery Receipts).]  The Mortgagee's Affidavit states that the NOI was served upon Plaintiffs, posted on the Property, and published in The Honolulu Star-Advertiser.  [Pike Decl., Exh. M (Mortgagee's Affidavit).]  Further, Defendants' foreclosure counsel sent a letter to Plaintiffs' counsel, dated October 4, 2010, confirming that the loan was referred to counsel to conduct a foreclosure of the Property, and enclosed a copy of the Note and Mortgage.  [Pike Decl., Exh. L (10/4/10 Letter).]

B.    **Further Requests for Delay**

Next, Defendants argue that Plaintiffs have had ample time to conduct discovery since filing their original Complaint on March 9, 2011.  Defendants entered the case on their Motion to Intervene on February 23, 2012.  They state that they were forced to file that motion because Plaintiffs failed to name the proper parties in their First Amended Complaint, despite requests from Defendants to do so from the beginning of the case.  Further, Plaintiffs' counsel "has refused to even meet with Defendants' counsel to discuss the case or discovery."  [Reply at 10.]

16

According to Defendants, Plaintiffs are not currently being considered for a loan modification, and no settlement discussions are pending.  "This is because Plaintiffs, despite repeated requests from Defendants, have failed to submit the documents required from them and have not otherwise responded to Defendants' prior settlement communications."  [Id. at 12.]

## STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

> Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex [Corp. v. Catrett], 477 U.S. [317,] 323 [(1986)].  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller [v. Glenn Miller Prods., Inc.], 454 F.3d [975,] 987 [(9th Cir. 2006)].
> When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. Nissan Fire, 210 F.3d at 1102-03.  On the other

hand, when the moving party meets its initial
burden on a summary judgment motion, the "burden
then shifts to the nonmoving party to establish,
beyond the pleadings, that there is a genuine
issue for trial." Miller, 454 F.3d at 987.  This
means that the nonmoving party "must do more than
simply show that there is some metaphysical doubt
as to the material facts." Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586 (1986) (footnote omitted).  The nonmoving
party may not rely on the mere allegations in the
pleadings and instead "must set forth specific
facts showing that there is a genuine issue for
trial." Porter v. Cal. Dep't of Corr., 419 F.3d
885, 891 (9th Cir. 2005) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).
"A genuine dispute arises if the evidence is such
that a reasonable jury could return a verdict for
the nonmoving party." California v. Campbell, 319
F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred
Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000)
("There must be enough doubt for a 'reasonable
trier of fact' to find for plaintiffs in order to
defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving
party's evidence is to be believed, and all
justifiable inferences are to be drawn in that
party's favor." Miller, 454 F.3d at 988
(quotations and brackets omitted).

Rodriguez v. Gen. Dynamics Armament & Technical Prods., Inc., 696

F. Supp. 2d 1163, 1176 (D. Hawai`i 2010) (some citations

omitted).

**DISCUSSION**

I.   **Defendants' Motion**

The Court first notes that, despite Plaintiffs' bare

assertion that there are genuine issues of material fact

precluding summary judgment, they fail to point to any evidence

in the record demonstrating as much.  Rather, Defendants have met

their burden on summary judgment as to each claim by
demonstrating the absence of any genuine issue of material fact.
See T.W. Elec. Serv., Inc., 809 F.2d at 630.  Even drawing all
justifiable inferences in Plaintiffs' favor, the Court concludes
that there are no genuine issues of material fact, and that
Defendants are entitled to judgment as a matter of law on each
claim, as set forth more fully below.

   A.   **Counts I and III (HOEPA and TILA Claims)**

Counts I and III are time-barred.  TILA claims seeking
damages are subject to a one-year statute of limitations that
begins to run from the date the loan is consummated, but the
doctrine of equitable tolling may extend that period.  15 U.S.C.
§ 1640(e); Cannon v. US Bank, NA, Civ. No. 11-00079 HG-BMK, 2011
WL 1637415, at *5 (D. Hawai`i Apr. 29, 2011) (citing King v.
Cal., 784 F.2d 910, 915 (9th Cir. 1986)).  Where the borrower
allegedly did not receive the required TILA disclosures, the
borrower must bring his rescission claim within three years after
the loan consummation.  The three-year period is a statute of
repose, which is not subject to equitable tolling.  15 U.S.C. §
1635(f); Cannon, 2011 WL 1637415, at *6 (some citations omitted)
(citing Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th
Cir. 2002)).  HOEPA is an amendment to TILA and is subject to the
same statute of limitations.  Herschelman v. New Century Mortg.
Corp., Cv. No. 09-00461 DAE-KSC, 2010 WL 4448224, at *4 n.3 (D.

19

Hawai`i Oct. 29, 2010) (citation omitted).

Insofar as Plaintiffs filed their original Complaint on March 9, 2011, and their loan closing date was December 11, 2006, they filed their HOEPA and TILA rescission claims beyond the three-year statute of repose.  Further, Plaintiffs' right of rescission expired when the Property was sold on March 3, 2011. They also failed to file their HOEPA and TILA damages claims within the one-year statute of limitations.  Plaintiffs present no argument or evidence regarding equitable tolling.  Further, Mr. Wood executed an acknowledgment of receipt of the TILA Disclosure Statement.

The Court GRANTS the Motion as to Counts I and III.

**B.    Count II (RESPA)**

Plaintiffs' Count II RESPA claim is also time-barred. "The statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation." Cannon, 2011 WL 1637415, at *7.  Alleged violations of § 2607 are subject to a one-year statute of limitations.  12 U.S.C. § 2614.  Plaintiffs failed to bring their RESPA claim within either of the applicable limitations periods. Although equitable tolling may apply to RESPA claims, Plaintiffs have not alleged or presented any facts specific to the RESPA claim that would warrant equitable tolling.

The Motion is GRANTED as to Count II.

C.   **Count IV (FCRA)**

This district court has recognized that:

> pursuant to 15 U.S.C. § 1681s-2(a), furnishers of credit information have a duty to provide accurate information to a credit reporting agency.  <u>See also Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1154 (9th Cir. 2009).  These duties are enforceable only by federal and state agencies. <u>See id.</u>; <u>see also Nelson v. Chase Manhattan Mortg. Corp.</u>, 282 F.3d 1057, 1059-60 (9th Cir. 2002); 15 U.S.C. § 1681s-2(d) (noting that duties created under § 1681s-2(a) are enforced exclusively by the Federal agencies and officials and State officials).  An individual may bring a private cause of action only under 15 U.S.C. § 1681s-2(b), where the furnisher is given notice from a credit reporting agency of a dispute and fails to investigate within specified time limits.  <u>See also Nelson</u>, 282 F.3d at 1060.  In other words, "[i]t is only after (1) a consumer has notified a credit reporting agency of an inaccuracy, (2) the agency has notified the furnisher, and (3) the furnisher has failed to take action, that a consumer may sue the furnisher."  <u>See Diana I Am v. Nat'l City Mortg. Co.</u>, 2010 WL 571936, at *10 (D. Haw. Feb. 17, 2010).

<u>Cootey v. Countrywide Home Loans, Inc.</u>, Civil No. 11-00152 JMS/KSC, 2011 WL 2441707, at *7 (D. Hawai`i June 14, 2011) (alteration in <u>Cootey</u>).

In the present case, Plaintiffs' FCRA claim fails to state a claim upon which relief can be granted because they have not alleged that: they notified a credit reporting agency about the allegedly inaccurate information that Defendants furnished; the agency notified Defendants; and Defendants failed to take action.  Plaintiffs presented no evidence or argument to the contrary.  The Motion is GRANTED as to Count IV.

D.  **Counts V, X, and XII (Fraudulent Misrepresentation, Fraud, and Mistake)**

Defendants seek summary judgment on Plaintiffs' state law claims in Counts V (fraudulent misrepresentation), X (fraud), and XII (mistake).

1.  **Fraud and Fraudulent Misrepresentation**

Under Hawai`i law, the elements of a fraudulent or intentional misrepresentation claim are: "(1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance." Miyashiro v. Roehrig, Roehrig, Wilson & Hara, 122 Hawai`i 461, 482-83, 228 P.3d 341, 362-63 (Ct. App. 2010) (citing Hawaii's Thousand Friends v. Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989)).  In order to support a finding of fraud, the plaintiff must establish these elements by clear and convincing evidence.  See, e.g., Hawaii's Thousand Friends, 70 Haw. at 286, 768 P.2d at 1301 (citation omitted).  The court in Miyashiro also noted that:

> Section 551 of the Restatement (Second) of Torts also addresses liability for wrongful non-disclosure, or fraud by omission:
> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose

22

the matter in question.
(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them[.]

122 Hawai`i at 483 n.24, 228 P.3d at 363 n.24 (alteration in Miyashiro).

Plaintiffs assert that, prior to closing, Franklin Financial made false representations about the loan terms and documents.  In opposition to Defendants' Motion, Plaintiffs do not dispute that Defendants did not make any false representations to them.  Further, Plaintiffs make no attempt to show that Defendants had knowledge or notice of the fraud allegedly undertaken by Franklin Financial.  To the extent Plaintiffs seek to hold Defendants liable for alleged misrepresentations made by Franklin Financial, they fail to set forth claims with the particularity required by Fed. R. Civ. P. 9(b), and have made no showing sufficient to survive summary judgment.

2.  **Mistake**

The Hawai`i Supreme Court has adopted § 152 of the Restatement (Second) of Contracts as the proper test to determine whether rescission of a contract is warranted based on mutual mistake.  Thompson v. AIG Hawaii Ins. Co., Inc., 111 Hawai`i 413,

424, 142 P.3d 277, 288 (2006) (citing <u>AIG Hawai`i Ins. Co. v.</u>

<u>Bateman</u>, 82 Hawai`i 453, 457–58, 923 P.2d 395, 399–400 (1996)).

Restatement (Second) of Contracts § 152 states:

> (1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.
>
> (2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

Here, Plaintiffs do not allege any facts supporting a mistake as to Defendants.  Their conclusory allegation that the parties entered into the loan based upon mutual mistake is not sufficient to survive a motion for summary judgment.

The Motion is GRANTED as to Counts V, X, and XII.

### E.    <u>Count VI (Breach of Fiduciary Duty</u>)

This district court has recognized that:

> Lenders generally owe no fiduciary duties to their borrowers.  <u>See, e.g.</u>, <u>Nymark v. Heart Fed. Sav. & Loan Ass'n</u>, 283 Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature."); <u>Miller v. U.S. Bank of Wash.</u>, 865 P.2d 536, 543 (Wash. App. 1994) ("The general rule . . . is that a lender is not a fiduciary of its borrower."); <u>Huntington Mortg. Co. v. DeBrota</u>, 703 N.E.2d 160, 167 (Ind. App. 1998) ("A lender does not owe a fiduciary duty to a borrower absent some special circumstances."); <u>Spencer v. DHI Mortg. Co.</u>, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent 'special circumstances' a loan transaction 'is at

arms-length and there is no fiduciary relationship
between the borrower and lender.'") (quoting <u>Oaks
Mgmt. Corp. v. Super. Ct.</u>, 51 Cal. Rptr. 3d 561
(Cal. App. 2006)); <u>Ellipso, Inc. v. Mann</u>, 541 F.
Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he
relationship between a debtor and a creditor is
ordinarily a contractual relationship . . . and is
not fiduciary in nature.") (citation omitted).

<u>McCarty v. GCP Mgmt., LLC</u>, Civil No. 10-00133 JMS/KSC, 2010 WL
4812763, at *5 (D. Hawai`i Nov. 17, 2010).  The district court in
<u>McCarty</u> recognized that such a special relationship "might arise
where there is inequality of bargaining power."  <u>Id.</u> (citing
<u>Miller</u>, 865 P.2d at 543 ("A quasi-fiduciary relationship may
exist where the lender has superior knowledge and information,
the borrower lacks such knowledge or business experience, the
borrower relies on the lender' advice, and the lender knew the
borrower was relying on the advice.")).

    Plaintiffs have not come forward with any evidence on
summary judgment to support this claim; that is, there are no
facts demonstrating any special circumstances beyond the
traditional borrower-lender relationship.  The Motion is GRANTED
as to Count VI.

    **F.   Count VII (Unjust Enrichment)**

    This Court has previously held that, as here, where the
Note and the Mortgage are express agreements that the Plaintiffs
executed in connection with their loan, Plaintiffs can not pursue
an unjust enrichment claim.

    To prevail on an unjust enrichment

25

claim, a plaintiff must show that: 1) it has
conferred a benefit upon the defendant, and
2) that the retention of the benefit was
unjust.  <u>Wadsworth v. KSL Grant (sic) Wailea
Resort, Inc.</u>, --- F. Supp. 2d ----, No.
08-00527, 2010 WL 5146521, at *11 (D. Haw.
December 10, 2010).

    As a general rule, "[a]n action for
unjust enrichment cannot lie in the face of
an express contract." <u>Porter v. Hu</u>, [116
Hawai'i 42] 169 P.3d 994 (Haw. App. 2007);
<u>see also</u> <u>Goodwin v. Executive Trustee Servs.,
LLC</u>, 680 F. Supp. 2d 1244, 1255 (D. Nev.
2010) ("An action 'based on a theory of
unjust enrichment is not available when there
is an express, written contract, because no
agreement can be implied when there is an
express agreement.'"  (quoting <u>Leasepartners
Corp. v. Robert L. Brooks Trust Dated
November 12, 1975</u>, [113 Nev. 747] 942 P.2d
182, 187 (Nev. 1997))); <u>MacDonald v. Hayner</u>,
[43 Wash. App. 81] 715 P.2d 519, 522 (Wash.
App. 1986) ("A party to a valid express
contract is bound by the provisions of that
contract, and may not disregard the same and
bring an action on an implied contract
relating to the same matter, in contravention
of the express contract.")  Here both the
Note and the Mortgage were express agreements
that Plaintiffs executed in connection with
their loan which govern the parties (sic)
rights and obligations.  Plaintiffs cannot,
therefore, pursue an unjust enrichment claim.

<u>Velasco v. Sec. Nat'l Mortg. Co.</u>, CV. No. 10-00239
DAE-KSC, 2011 WL 2117008, at *11 (D. Hawai'i May
24, 2011) (alterations in original) (footnote
omitted).

<u>Caraang v. PNC Mortg.</u>, 795 F. Supp. 2d 1098, 1118 (D. Hawai'i

2011).  Here, Plaintiffs allegations relate to the Note and

Mortgage, which were express agreements that they executed in

connection with their loan, and Plaintiffs therefore cannot

maintain an unjust enrichment claim.  Plaintiffs did not come forward with any evidence or argument in opposition to Defendants' request for summary judgment.

The Motion is GRANTED as to Count VII.

**G.   Count VIII (Conspiracy and Aiding and Abetting)**

Defendants seek summary judgment on Count VIII because it relies on Plaintiffs' meritless HOEPA, RESPA, TILA, FCRA, fraud, UDAP and GLBA claims.  The Court finds that Defendants are entitled to summary judgment on these underlying claims, and therefore, Plaintiffs cannot maintain derivative claims for civil conspiracy or aiding and abetting.

> Defendant is correct that, "[i]n general, Hawaii does not recognize independent causes of action for civil conspiracy or aiding and abetting—such theories of potential liability are derivative of other wrongs." Long v. Deutsche Bank Nat'l Tr. Co., Civil No. 10-00359 JMS/KSC, 2011 WL 2650219, at *8 (D. Hawai`i July 5, 2011) (citing Weinberg v. Mauch, 78 Haw. 40, 49, 890 P.2d 277, 286 (1995); Chung v. McCabe Hamilton & Renny Co., 109 Haw. 520, 530, 128 P.3d 833, 843 (2006)). . . .

> As to Plaintiff's civil conspiracy claim, this district court has recognized that:

> > "'the accepted definition of a conspiracy is a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means.'" Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 881 n. 28 (Haw. 1999) (quoting Duplex Printing Press Co. v. Deering, 254 U.S. 443, 466 (1921)) (alteration in original). . . .

"A conspiracy is constituted by an agreement . . .  No formal agreement between the parties is essential to the formation of the conspiracy, for the agreement may be shown if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." Marino v. United States, 91 F.2d 691, 694 (9th Cir. 1937)[.]

Stanton v. Bank of Am., N.A., Cv. No. 09-00404 DAE-LEK, 2010 WL 4176375, at *18 (D. Hawai`i Oct. 19, 2010) (some alterations in Stanton).

As to Plaintiff's aiding and abetting claim, the court in Stanton recognized that:

Hawai`i courts have not explicitly articulated a test for civil aiding and abetting.  See Unity House, Inc. v. North Pacific Inv., Inc., 918 F. Supp. 1384, 1390 & n.5 (D. Haw. 1996) ("even assuming there existed aiding and abetting liability for fraud in Hawaii, Unity House would not survive summary judgment on this claim"); see also Nakamoto v. Hartley, 758 F. Supp. 1357, 1366 (D. Haw. 1991) ("Hawaii courts have given no indication that on a fraud claim brought under Hawaii common law, a defendant may be held liable for aiding and abetting a fraud . . . .") (citation omitted).  However, the court in Television Events & Marketing, Inc. v. Amcon Distributing Co., 488 F. Supp. 2d 1071 (D. Haw. 2006) rejected an argument that these cases supported a contention that aiding and abetting a breach of fiduciary duty was not a viable cause of action in Hawai`i.  Id. at 1076-77. . . .

Id. at *14 (some alterations in Stanton). Further, the court "agree[d] with Television Events & Marketing, Inc. and f[ound] the weight of authority in support of a cause of action for civil aiding and abetting an intentional tort under Hawai`i law as defined by the Restatement (Second) of Torts § 876 subsections (b) and (c)." Id. at *15.

28

The Restatement (Second) of Torts § 876
states, in pertinent part:

> For harm resulting to a third person from the
> tortious conduct of another, one is subject
> to liability if he
>
> . . . .
>
> > (b) knows that the other's conduct
> > constitutes a breach of duty and gives
> > substantial assistance or encouragement
> > to the other so to conduct himself, or
> > (c) gives substantial assistance to the
> > other in accomplishing a tortious result
> > and his own conduct, separately
> > considered, constitutes a breach of duty
> > to the third person.

The court in Stanton also noted that California
courts have elaborated on § 876(b) and (c), and
that Hawai`i courts often look to California
courts for guidance when there is no Hawai`i
precedent.  Thus, the California courts'
interpretation of § 876(b) and (c) applied to
Plaintiff's aiding and abetting claim in this
case.  Stanton, 2010 WL 4176375, at *15.

> As to the first test for aiding and
> abetting requiring knowledge that the other's
> alleged conduct constituted a breach of duty,
> the court in Casey v. U.S. Bank Nat'l Ass'n,
> 127 Cal. App. 4th 1138, 1144 (2005) found
> that to satisfy the knowledge prong, the
> defendant must have "actual knowledge of the
> specific primary wrong the defendant
> substantially assisted."  Id. at 406; see
> also Central Bank of Denver, N.A. [v. First
> Interstate Bank of Denver, N.A.], 511 U.S.
> 164 [(1994)] (quoting the Restatement
> (Second) of Torts § 876(b)).

Id. at *16.

Hele Ku KB, LLC v. BAC Home Loans Servicing, LP, Civil No.

11-00183 LEK-KSC, 2011 WL 5239744, at *15-16 (D. Hawai`i Oct. 31,

2011).

Because Defendants are entitled to summary judgment on Plaintiffs' underlying claims, the Motion is GRANTED as to Count VIII.

### H.   Count IX (Quiet Title)

This district court has construed similar allegations seeking to quiet title as attempts to assert a claim pursuant to Haw. Rev. Stat. § 669-1(a).  See, e.g., Phillips v. Bank of Am., Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *13 (D. Hawai`i Jan. 21, 2011).  Section 669-1(a) states: "Action may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."

In order for a mortgagor to quiet title against the mortgagee, the mortgagor must establish that he or she is the rightful owner of the property and has paid, or is able to pay, the outstanding debt on the property.  Phillips, 2011 WL 240813, at *13.  Plaintiffs fail to do so here.  They do not have title to the Property, pursuant to the Quitclaim Deed, and they have made no attempt to demonstrate an intent or ability to tender the original amount borrowed to effect a rescission.

The Motion is GRANTED as to Count IX.

### I.   Count XI (FDCPA Claim)

Section 1692e of the FDCPA provides that "a debt

30

collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e(1). Defendants seek summary judgment on Count XI because Wells Fargo was the holder of the Note and Mortgage at the time of the Foreclosure Sale, and did not make any false representations with respect to the Note and Mortgage. Plaintiffs did not make any attempt to refute Defendants' showing on summary judgment, and fail to demonstrate that they are entitled to challenge the indorsement of the Note or Mortgage to Wells Fargo.

Further, this district court has previously explained that mortgage lenders and servicers may not qualify as "debt collectors" under the FDCPA.

> To be liable for a violation of the FDCPA, the defendant must, as a threshold requirement, be a "debt collector" within the meaning of the FDCPA. Heintz v. Jenkins, 514 U.S. 291, 294 (1995).
>
> . . . [S]everal courts have held that "activities undertaken in connection with a nonjudicial foreclosure do not constitute debt collection under the FDCPA." See, e.g., Gillespie v. Countrywide Bank FSB, 2011 WL 3652603, at *2 (D. Nev. Aug. 19, 2011) (citing Diessner v. Mortg. Elec. Registration Sys., 618 F. Supp. 2d 1184, 1188–89 (D. Ariz. 2009)); McFadden v. Deutsche Bank Nat'l Trust Co., 2011 WL 3606797, at *10 (E.D. Cal. Aug. 16, 2011) (collecting cases).
>
> . . . . Further, original lenders, creditors, mortgage servicing companies, and mortgage brokers generally do not qualify as "debt collectors." See, e.g., Lyons v. Bank of Am., NA, 2011 WL 3607608, at *12 (N.D. Cal. Aug. 15, 2011) ("The FDCPA applies to those who collect debts on behalf

> of another; it does not encompass creditors who
> are collecting their own past due accounts."); 
> <u>Radford v. Wells Fargo Bank</u>, 2011 WL 1833020, at
> *15 (D. Haw. May 13, 2011) (collecting cases
> stating that original lenders and mortgage
> servicing companies are not "debt collectors"); 
> <u>Sakugawa v. IndyMac Bank, F.S.B.</u>, 2010 WL 4909574,
> at *5 (D. Haw. Nov. 24, 2010) (dismissing FDCPA
> claim because the mortgage broker was not a "debt
> collector").

<u>Long v. Deutsche Bank Nat'l Trust Co.</u>, Civil No. 10-00359

JMS/KSC, 2011 WL 5079586, at *13-14 (D. Hawai'i Oct. 24, 2011).

Plaintiffs made no attempt to show that Defendants are "debt

collectors," or that Defendants lack a complete chain of

indorsements for the Note or chain of assignments for the

Mortgage.

The Motion is GRANTED as to Count XI.

J.    **Count XIII (Unconscionability)**

Unconscionability is generally a defense in a contract

action, not an affirmative claim for relief.  <u>Phillips</u>, 2011 WL

240813, at *12 (citations omitted).  "To the extent

unconscionability can be addressed affirmatively as part of a

different-that is, independent-cause of action, such a claim is

asserted to prevent the enforcement of a contract whose *terms* are

unconscionable."  <u>Id.</u> (emphasis in original) (citation and

internal quotation marks omitted).  Dismissal of an

unconscionability "claim" is proper where the claim only

challenges the defendant's general conduct and does not identify

any specific contractual term as unconscionable.  <u>Id.</u>

32

In the present case, Plaintiffs have not attempted to establish that any specific term of the Note or Mortgage was unconscionable.  Rather, they allege that they did not understand the loan transaction and that they had inferior bargaining power. Plaintiffs fail to state an affirmative claim for unconscionability.

The Motion is Granted as to Count XIII.

**K.    Count XIV (UDAP)**

Defendants argue they are entitled to summary judgment on Count XIV because the claim is time-barred, Defendants made no misrepresentations, and because Plaintiffs cannot tender funds to effect a rescission.

Claims under § 480-2 are subject to a four-year statute of limitations.  Haw. Rev. Stat. § 480-24(a).  None of the tolling provisions in § 480-24(b) apply in the instant case. This district court has ruled "to construe HRS Ch. 480 in accordance with federal cases interpreting similar federal antitrust laws such as 15 U.S.C. § 15b, . . . the statute of limitations on a HRS Ch. 480 claim may be tolled under the equitable tolling doctrine of fraudulent concealment." Rundgren v. Bank of New York Mellon, 777 F. Supp. 2d 1224, 1231 (D. Hawai'i 2011).  Plaintiffs, however, have not presented any evidence that would support a finding that fraudulent concealment, or any other applicable equitable tolling doctrine,

applies; their claims are therefore time-barred.

Further, this district court has recognized that:

"lenders generally owe no duty to a borrower 'not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.'" McCarty v. GCP Mgmt., LLC, 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010) (quoting Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)). See also Sheets v. DHI Mortg. Co., 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.'" (quoting Renteria v. United States, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006)).
    "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991). Nothing in the Complaint indicates that any Defendant "exceed[ed] the scope of [a] conventional role as a mere lender of money." The claims fail on that basis alone.

Casino v. Bank of Am., Civil No. 10-00728 SOM/BMK, 2011 WL 1704100, at *12-13 (D. Hawai`i May 4, 2011). Wells Fargo was not the original lender, and Plaintiffs fail to establish that it breached any duty to them, or that it made any misrepresentations that amount to violations of Haw. Rev. Stat. Chapter 480. For these reasons, and because the claims are time-barred, the Motion is GRANTED as to Count XIV.

    L.    **Count XV (Good Faith)**

This district court has characterized similar claims as

34

attempts to allege claims for the tort of bad faith.  See, e.g.,
Phillips, 2011 WL 240813, at *5 (citing Best Place v. Penn Am.
Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting
tort of bad faith for breach of implied covenant of good faith
and fair dealing in an insurance contract)).

> "In Best Place, the Hawaii Supreme Court
> noted that although Hawaii law imposes a duty of
> good faith and fair dealing in all contracts,
> whether a breach of this duty will give rise to a
> bad faith tort cause of action depends on the
> duties inherent in a particular type of contract."
> Jou v. Nat'l Interstate Ins. Co. of Haw., 114 Haw.
> 122, 129, 157 P.3d 561, 568 (Haw. App. 2007)
> (citing Best Place, 82 Haw. at 129, 920 P.2d at
> 334).  "The court concluded that special
> characteristics distinguished insurance contracts
> from other contracts and justified the recognition
> of a bad faith tort cause of action for the
> insured in the context of first- and third-party
> insurance contracts."  Id. (citing Best Place, 82
> Haw. at 131-32, 920 P.2d at 345-46). Indeed, "the
> Hawaii Supreme Court emphasized that the tort of
> bad faith, as adopted in Best Place, requires a
> contractual relationship between an insurer and an
> insured."  Id. (citing Simmons v. Puu, 105 Haw.
> 112, 120, 94 P.3d 667, 675 (2004)).
>
> Moreover, although commercial contracts for
> "sale of goods" also contain an obligation of good
> faith in their performance and enforcement, this
> obligation does not create an independent cause of
> action.  See Stoebner Motors, Inc. v. Automobili
> Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1037-38
> (D. Haw. 2006).  And Hawaii courts have noted that
> "[o]ther jurisdictions recognizing the tort of bad
> faith . . . limit such claims to the insurance
> context or situations involving special
> relationships characterized by elements of
> fiduciary responsibility, public interest, and
> adhesion."  Id. at 1037 (quoting Francis v. Lee
> Enters., 89 Haw. 234, 238, 971 P.2d 707, 711
> (1999)).  It is thus unlikely that Plaintiffs
> could recover for bad faith as alleged in Count
> III.

Importantly, even assuming a bad faith tort exists outside the insurance context, it is well-settled that "[a] party cannot breach the covenant of good faith and fair dealing before a contract is formed." Contreras v. Master Fin., Inc., 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance under an extant contract, and not to any pre-contract conduct.")). Hawaii follows this distinction. See Young v. Allstate Ins. Co., 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

Thus, because all of Count III's allegations concern pre-contract activities (failing to disclos[e] terms, failing to conduct proper underwriting, making an improper loan to Plaintiffs), Defendants cannot be liable for bad faith. See id.; see also Larson v. Homecomings Fin., LLC, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

And, even if Plaintiffs are attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing." Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted). "The covenant [of good faith] does not 'impose any affirmative duty of moderation in the enforcement of legal rights.'" Id. (quoting Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 479-80, 261 Cal. Rptr. 735, 742 (1989)).

Id. at *5-6 (some alterations in original).

The majority of the alleged failures to act in good faith deal with pre-loan consummation activities. Even if

Hawai'i law did recognize such a claim, a plaintiff cannot establish a breach of the covenant of good faith and fair dealing with actions prior to contract formation.  The only post-formation events relate to the foreclosure, however, as discussed below, there is no evidence that Defendants conducted the foreclosure in a manner that violated the terms of the Mortgage.  Defendants are entitled to summary judgment on this claim.

The Motion is GRANTED as to Count XIV.

**M.    Count XVIII (NIED)**

The elements of a claim for negligent infliction of emotional distress ("NIED") are: (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress.  Tran v. State Farm Mut. Automobile Ins. Co., 999 F. Supp. 1369, 1375 (D. Haw. 1998).  A cognizable claim for NIED under Hawaii law also "requires physical injury to either a person or property," see Calleon v. Miyagi, 76 Haw. 310, 320, 876 F.2d 1278 (1994), or a mental illness, see Haw. Rev. Stat. § 663-8.9.

Dowkin v. Honolulu Police Dep't, Civ. No. 10-00087 SOM-LEK, 2010 WL 4961135, at *9 (D. Hawai'i Nov. 30, 2010).  Duty and breach of duty are essential elements of a negligence claim under Hawai'i law.  See Cho v. Hawai'i, 115 Hawai'i 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) ("It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of

negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages.").

As a general rule, lenders do not owe their borrowers a duty of care sounding in negligence.  McCarty v. GCP Mgmt., LLC, Civil No. 10-00133 JMS/KSC, 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010) (some citations omitted) (citing Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009); Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. App. 1991)).  Similar to the special circumstances exception to the general rule that a borrower-lender relationship does not give rise to a fiduciary relationship, "a lender may owe to a borrower a duty of care sounding in negligence when the lender's activities exceed those of a conventional lender." Champlaie, 706 F. Supp. 2d at 1060 (discussing Nymark).

For these reasons, and because Plaintiffs make no effort to support their NIED claims, the Motion is GRANTED as to Count XVIII.

N.   **Counts XIX and XX (GLBA and Constitutional Claims)**

Plaintiffs have no private right of action to bring claims under GLBA or the Hawai'i Constitution's right of privacy.

1.   **GLBA**

Section 6805(a) of GLBA states, in pertinent part, "[t]his subchapter and the regulations prescribed thereunder shall be enforced by the Federal functional regulators, the State

insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law[.]"  Thus, "[t]he Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801, *et seq.*, does not provide for a private right of action."  <u>Cannon v. Zurich N. Am.</u>, No. CV-07-0927-PHX-FJM, 2007 WL 2875500, at *1 (D. Ariz. Oct. 3, 2007) (citing 15 U.S.C. § 6805(a); <u>Rowland v. Prudential Fin., Inc.</u>, No. CV-04-2287, 2007 WL 1893630, at *6 (D. Ariz. July 2, 2007)).

Insofar as there is no private right of action under GLBA, Count XIX fails to state a claim upon which relief can be granted.  The Motion is GRANTED as to Count XIX.

## 2. **<u>Hawai'i Constitution</u>**

This district court has recognized that there is "no independent state law claim for a violation of privacy in bank records under the Hawaii State Constitution."  <u>Flowers v. First Hawaiian Bank</u>, 289 F. Supp. 2d 1213, 1221 (D. Hawai'i 2003) (citing <u>State v. Klattenhoff</u>, 71 Haw. 598, 801 P.2d 548, 552 (1990) ("we adopt the rule set forth in <u>United States v. Miller</u>, [425 U.S. 435, 440-43 (1976),] and follow the majority of states in finding no reasonable expectation of privacy in personal bank records")).

Insofar as there is no private right of action, Count XX fails to state a claim upon which relief can be granted.  The

Motion is GRANTED as to Count XX.

**O.**   **Count XXI (Haw. Rev. Stat. Chapter 667)**

Defendants seek summary judgment on Count XXI, arguing that Wells Fargo completed the foreclosure sale in complete compliance with Haw. Rev. Stat. Chapter 667, as evidenced by the Mortgagee's Affidavit.  They assert that Wells Fargo: (1) was represented by an attorney licensed to practice in Hawai'i; (2) published the required advertisement in The Honolulu Star-Advertiser once in each of three successive weeks, fourteen days before the public auction; (3) timely posted a copy of the NOI on the Property; and (4) recorded the Mortgagee's Affidavit. Plaintiffs present no evidence to the contrary and fail to establish a genuine issue of material fact with respect to Defendants' foreclosure-related conduct.

This district court has explained that a wrongful foreclosure claim will not lie where all required notices have been procedurally proper.

> Initially, Plaintiffs have not identified any procedural errors in the foreclosure process itself that would make the foreclosure "wrongful." See Doran v. Wells Fargo Bank, 2011 WL 5239738, at *9 (D. Haw. Oct. 31, 2011) (indicating that a "wrongful foreclosure" claim failed under Hawaii law because the notice of foreclosure was procedurally proper under HRS Ch. 667, and "the loan modification process did not invalidate the notice because an oral promise of a future loan modification does not supercede a mortgagee's right to sell").  Moreover, although Hawaii has not specifically recognized a common law wrongful foreclosure cause of action, "[s]ubstantive

> wrongful foreclosure claims [in other
> jurisdictions] typically are available after
> foreclosure and are premised on allegations that
> the borrower was not in default, or on procedural
> issues that resulted in damages to the borrower."
> Cervantes v. Countrywide Home Loans, 656 F.3d
> 1034, 1043 (9th Cir. 2011).

Matsumura v. Bank of Am., N.A., CIV. No. 11-00608 JMS-BMK, 2012 WL 463933, at *3 (D. Hawai'i Feb. 10, 2012).  Plaintiffs have not established a genuine issue of material fact with respect to their Chapter 667 claim and further fail to state a claim for wrongful foreclosure.

The Motion is GRANTED as to Count XXI.

## II.  Plaintiffs' Request for Discovery

To the extent Plaintiffs ask the Court for more time to conduct discovery, they have not complied with Fed. R. Civ. P. 56(d).  Rule 56(d) provides that:

> If a nonmovant shows by affidavit or declaration
> that, for specified reasons, it cannot present
> facts essential to justify its opposition, the
> court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or
> > declarations or to take discovery; or
> >
> > (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  Whether to deny a Rule 56(d) request for further discovery by a party opposing summary judgment is within the discretion of the district court.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 920-21 (9th Cir. 1996).

41

"A party requesting a continuance pursuant to Rule [56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." Tatum v. City & Cnty. of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006). Moreover, "[t]he burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists." Nidds, 113 F.3d at 921.

"Failure to comply with the requirements of Rule [56(d)] is a proper ground for denying discovery and proceeding to summary judgment." Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986); see also Tatum, 441 F.3d at 1100-01 (finding that an attorney declaration was insufficient to support a Rule 56 continuance where the declaration failed to specify specific facts to be discovered or explain how a continuance would allow the party to produce evidence precluding summary judgment).

Plaintiffs fail to comply with the requirements of Rule 56(d), and have not met their burden to proffer sufficient facts to show that the evidence sought exists. The Court DENIES Plaintiffs' request for time to conduct additional discovery.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion for Summary Judgment on Plaintiffs' First Amended Complaint, filed on

42

July 5, 2012, is HEREBY GRANTED.

       IT IS SO ORDERED.

       DATED AT HONOLULU, HAWAII, October 30, 2012.



                         /S/ Leslie E. Kobayashi
                        Leslie E. Kobayashi
                        United States District Judge

**RICHARD M. WOOD, ET AL. V. WELLS FARGO BANK, N.A., ET AL; CIVIL NO. 11-00150 LEK-KSC; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' FIRST AMENDED COMPLAINT**